**ALFRED DUNHILL OF LONDON, INC.,**
**Plaintiff,**

v.

**DUNHILL SHIRT COMPANY,**
**Defendant.**

United States District Court
S. D. New York.
Jan. 18, 1963.

Leslie D. Taggart, Watson, Leavenworth, Kelton & Taggart, New York City, for plaintiff.

David Sklaire, Ostrow, Goldman & Sklaire, New York City, for defendant.

NOONAN, District Judge.

This is a civil action for trademark infringement and unfair competition brought under the Trademark Laws of the United States. After a trial of all of the issues commencing on December 6, 1962, and a study of all the exhibits and on the record as a whole, this court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff, Alfred Dunhill of London, Inc., is a Delaware corporation with its office and principal place of business in the City, County and State of New York, and in the Southern District of New York.

2. Defendant, Dunhill Shirt Company, is a Missouri corporation with its office and principal place of business in Lexington, Missouri, and has an office and place of business at 350 Fifth Avenue, New York, New York, and in the Southern District of New York.

3. Defendant was incorporated in Missouri on February 17, 1939 as Dun-Hill Shirt Company, and, on July 10, 1945, filed an amendment changing its corporate name to Dunhill Shirt Company.

4. There is diversity of citizenship between plaintiff and defendant, and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $10,000.

5. Prior to September, 1921, Alfred Dunhill of London, England, an individual, had used DUNHILL as his trademark in the United States on various products.

6. By an agreement of August 11, 1921 with said Alfred Dunhill, plaintiff became the exclusive distributor of DUNHILL products in the United States. Said relationship has continued from that time to the present and is so continuing, first with said Alfred Dunhill and later (1923) with his successor in business, Alfred Dunhill Ltd., a corporation of Great Britain, under various agreements and modifications thereof, the most recent of which agreements is dated August 29, 1961.

7. Plaintiff's sale of DUNHILL products from September, 1921 until May 15, 1922 was solely at wholesale, but on May 15, 1922, plaintiff opened a retail store in the City of New York, and, since that time, plaintiff has sold products bearing the trademark DUNHILL both at wholesale and at retail.

8. Plaintiff's retail store in the City of New York occupied the ground floor store and other space at 512–14 Fifth Avenue (southwest corner of 43rd Street) from May 15, 1922 to November 18, 1933, and, since November 20, 1933, plaintiff has occupied and does now occupy the ground floor store and other space at 620 Fifth Avenue (southwest corner of 50th Street).

9. In 1922, plaintiff sold in its retail establishment tobacco products, smokers' articles, men's jewelry, including cuff links, tie bars, key chains, pocket knives and dress sets, flat leather goods, including wallets, billfolds, key cases and passport cases, canes and umbrellas, golf balls, razors, clocks, desk sets, playing cards and bridge sets, mahjong sets, silver tea sets, tea caddies, bar fixtures and accessories, luggage, including brief cases, travel cases and toilet cases, and other gift items of various descriptions under the trademark and trade name DUNHILL.

10. From the time of the opening of its retail store in New York on May 15, 1922, plaintiff has constantly added to its retail line of DUNHILL products, and included among such products have been items of clothing, including sport shirts, ties, slippers, sweaters, dressing gowns, smoking jackets, handkerchiefs, haberdashery and toiletries and additional gift items and leather goods.

11. Plaintiff's net retail sales at its New York and Beverly Hills stores only have been as follows:

NEW YORK STORE

| Years | | Net Sales |
|---|---|---|
| 1922 | (May 15–Dec. 31) | $ 293,914.43 |
| 1923 | | 466,664.88 |
| 1924 | | 508,998.02 |
| 1925 | | 637,666.05 |
| 1926 | | 750,323.46 |
| 1927 | | 767,234.50 |
| 1928 | | 653,910.89 |
| 1929 | | 617,751.51 |
| 1930 | | 468,314.16 |
| 1931 | | 335,481.63 |
| 1932 | | 264,025.50 |
| 1933 | (to Nov. 18) | 175,240.85 |
| 1933 | (Nov. 20–Dec. 31) | 153,899.36 |
| 1934 | | 659,643.56 |
| 1935 | | 617,024.10 |
| 1936 | | 675,693.31 |
| 1937 | | 467,197.44 |
| 1938 | | 412,308.47 |
| 1939 | | 440,207.91 |
| 1940 | | 455,681.35 |
| 1941 | | 535,393.03 |
| 1942 | | 703,566.40 |
| 1943 | | 1,193,008.58 |
| 1944 | | 1,781,654.85 |
| 1945 | | 2,204,174.56 |
| 1946 | | 2,311,072.97 |
| 1947 | | 1,876,182.89 |
| 1948 | | 1,545,986.22 |
| 1949 | | 1,324,631.88 |
| 1950 | | 1,250,076.63 |
| 1951 | | 1,341,662.69 |
| 1952 | | 1,274,414.00 |
| 1953 | | 1,198,692.52 |
| 1954 | | 1,229,354.08 |
| 1955 | | 1,250,915.43 |
| 1956 | | 1,323,105.98 |
| 1957 | | 1,491,209.63 |
| 1958 | | 1,505,706.00 |

| Years | Net Sales |
|---|---|
| 1959 | 1,709,700.00 |
| 1960 | 1,724,277.00 |
| 1961 | 1,853,909.00 |

BEVERLY HILLS STORE

| 1951 | (Sept. 10–Dec. 31) | 78,518.24 |
|---|---|---|
| 1952 | | 177,309.72 |
| 1953 | | 168,714.81 |
| 1954 | | 191,072.76 |
| 1955 | | 210,913.22 |
| 1956 | | 204,883.00 |
| 1957 | | 227,309.00 |
| 1958 | | 275,709.00 |
| 1959 | | 337,133.00 |
| 1960 | | 367,755.00 |
| 1961 | | 392,748.00 |

12. Since 1921, plaintiff has expended substantial sums each year for advertising and promoting the sale of DUNHILL products.

13. DUNHILL had a special significance as meaning plaintiff and its product, including quality men's wear, long before defendant made any use of the words DUN-HILL or DUNHILL, i. e., before 1939.

14. Prior to the incorporation of defendant in 1939, DUNHILL was a famous trade name and trademark, which meant plaintiff and its products, including quality men's wear, to the purchasing public.

15. From long prior to the time of the defendant's incorporation up to the present, DUNHILL has had and now has a special significance to the purchasing public as meaning plaintiff and its various products, including quality men's wear.

16. Plaintiff is the owner of the following trademark registration issued by the United States Patent Office:

| Trademark | Registration | Issued |
|---|---|---|
| DUNHILL | 403,585 | September 28, 1943 |

17. Plaintiff is the exclusive user in the United States of the following trademarks registered in the United States Patent Office by said Alfred Dunhill Ltd., a corporation of Great Britain:

| Trademark | Registration | Issued |
|---|---|---|
| Alfred Dunhill (script) | 155,951 | June 13, 1922 |
| Design | 203,732 | September 22, 1925 |
| DUNHILL | 403,661 | October 5, 1943 |
| DUNHILL | 404,218 | November 9, 1943 |
| DUNHILL | 406,638 | April 11, 1944 |
| Alfred Dunhill (script) | 419,717 | March 5, 1946 |
| Alfred Dunhill (script) | 421,429 | June 4, 1946 |
| DUNHILL | 527,207 | July 4, 1950 |
| DUNHILL | 527,208 | July 4, 1950 |
| DUNHILL | 534,705 | December 12, 1950 |
| DUNHILL | 539,892 | March 27, 1951 |
| DUNHILL | 540,389 | April 3, 1951 |
| DUNHILL DOUBLE-CLARO | 541,949 | May 8, 1951 |
| ALFRED DUNHILL | 634,071 | September 4, 1956 |

18. No one with the name of DUNHILL has ever been connected with defendant or with the family of the late Barney R. Schucart, who incorporated defendant, or the family of his nephew, Ralph Schucart, defendant's present president, and defendant offered no explanation or justification of the appropriation by defendant's incorporators of DUNHILL as defendant's trademark and as part of its corporate name or trade name.

19. Defendant began manufacturing and selling shirts bearing DUNHILL in 1939 and since that time has continuously manufactured and sold shirts bearing DUNHILL.

20. For twenty years defendant has manufactured shirts for the account of and sold shirts to Sears Roebuck & Co. and J. C. Penney Company, and, more recently, to other concerns, which shirts did not bear DUNHILL but bore, instead, the trademarks of the respective purchasers; and, in addition, defendant has since 1956 manufactured and sold other shirts, none of which bore DUNHILL, but which bore WENTWORTH or EMPIRE.

21. Defendant's use of DUNHILL on or in connection with shirts and its use of "Dunhill Shirt Company" are colorable imitations of plaintiff's common law trademark DUNHILL and of the registered trademarks DUNHILL and ALFRED DUNHILL of which plaintiff is the owner or exclusive user in the United States, and, because of such similarity, defendant's business and products are likely to be mistaken for or confused with plaintiff, its business or products, and defendant's use thereof is likely to create the erroneous impression that defendant and its products originate with plaintiff or are endorsed by plaintiff or are connected in some way in trade with plaintiff.

22. Defendant's use of DUNHILL and "Dunhill Shirt Company" are colorable imitations of plaintiff's corporate name and of its trade name DUNHILL, and, because of such similarity, defendant's business and products are likely to be mistaken for or confused with plaintiff, its business or products, and defendant's use thereof is likely to create the erroneous impression that defendant and its products originate with plaintiff or are endorsed by plaintiff or are connected in some way in trade with plaintiff.

23. Defendant offered no proof that plaintiff knew or should have known that

defendant was manufacturing or selling DUNHILL shirts before defendant's application to register DUNHILL for shirts was published for opposition in the Official Gazette of the United States Patent Office on March 20, 1956, to which application plaintiff filed its Notice of Opposition (No. 36,107) within the time prescribed by statute.

24. Defendant's use of DUNHILL upon or in connection with shirts and in its corporate title was without the knowledge or permission of plaintiff.

25. Plaintiff has not advertised, offered for sale or sold DUNHILL products in any improper or illegal way and comes into court with clean hands.

26. No proof has been offered to support defendant's position that plaintiff has monopolized any product or products or that plaintiff has violated any anti-trust laws of the United States.

## CONCLUSIONS OF LAW

1. This is a civil action for trademark infringement and unfair competition brought under the Trademark Laws of the United States (Trademark Act of July 5, 1946, 15 U.S.C. § 1051 et seq.), under the Judicial Code, 28 U.S.C. § 1338, and by virtue of diversity of citizenship of the parties and the amount in controversy.

2. This court has jurisdiction of the parties and of the subject matter of the action by virtue of the Trademark Laws of the United States and also by virtue of the diversity of citizenship of the parties and the amount in controversy.

3. DUNHILL was a good and valid common law trademark for a variety of goods, including tobacco products, smokers' articles, jewelry, leather goods, gift items, haberdashery, clothing and men's wear, including sport shirts, ties, slippers, sweaters, dressing gowns, smoking jackets, and handkerchiefs, prior to 1939 and meant to the purchasing public the goods sold by plaintiff.

4. DUNHILL was a good and valid common law trade name prior to 1939 and meant plaintiff to the purchasing public.

5. DUNHILL has continued to be, from long prior to 1939 to date, and now is a good and valid trademark in the United States for such products then sold by plaintiff and for additional gift items, toiletries, sporting goods, haberdashery, leather goods, and clothing as have from time to time been added to the line of goods sold by plaintiff.

6. DUNHILL has continued to be, from long prior to 1939 to date, and now is a good and valid trade name of plaintiff.

7. The following United States trademark registrations are all good, valid and outstanding:

| Trademark | Registration | Issued |
| --- | --- | --- |
| Alfred Dunhill (script) | 155,951 | June 13, 1922 |
| Design | 203,732 | September 22, 1925 |
| DUNHILL | 403,585 | September 28, 1943 |
| DUNHILL | 403,661 | October 5, 1943 |
| DUNHILL | 404,218 | November 9, 1943 |
| DUNHILL | 406,638 | April 11, 1944 |
| Alfred Dunhill (script) | 419,717 | March 5, 1946 |
| Alfred Dunhill (script) | 421,429 | June 4, 1946 |
| DUNHILL | 527,207 | July 4, 1950 |
| DUNHILL | 527,208 | July 4, 1950 |
| DUNHILL | 534,705 | December 12, 1950 |
| DUNHILL | 539,892 | March 27, 1951 |
| DUNHILL | 540,389 | April 3, 1951 |
| DUNHILL DOUBLE-CLARO | 541,949 | May 8, 1951 |
| ALFRED DUNHILL | 634,071 | September 4, 1956 |

8. Defendant's use of DUNHILL in the sale of its products, both on or in connection with its shirts and in its corporate name, infringed and infringes plaintiff's trademark and trade name DUNHILL in that it is likely to cause confusion or mistake or to deceive purchasers into the belief that such products of defendant are made by, sponsored by or connected in some way in trade with plaintiff and to cause confusion or mistake or to deceive purchasers as to the source or origin of defendant's products.

9. By its use of DUNHILL in the sale of its goods, both on or in connection with its shirts and in its corporate name, defendant has competed unfairly with plaintiff.

10. There is no laches present and plaintiff has not acquiesced in defendant's use of DUNHILL and plaintiff is not estopped to bring and prosecute this civil action and to obtain appropriate relief.

11. Plaintiff has not been guilty of unclean hands.

12. There has been no proof that plaintiff has violated any anti-trust laws of the United States.

13. Plaintiff is entitled to an injunction against defendant, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them, enjoining them from using, in the manufacturing advertising, offering for sale or selling, of shirts or goods of a similar nature, the designations DUNHILL and "Dunhill Shirt Company" and any other designations which by colorable imitation or otherwise are likely to be mistaken for or confused with the trademark DUNHILL or with plaintiff's corporate name or trade name DUNHILL, or are likely to create the erroneous impression that defendant and its products originate with plaintiff or are endorsed by plaintiff or are connected in any way with plaintiff, and from otherwise competing unfairly with plaintiff or infringing plaintiff's rights.

14. Defendant is required to deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles and advertisements in the possession or control of defendant and all plates, molds, matrices and other means for making the same which might if used violate the injunction.

15. Plaintiff is entitled to recover full costs and disbursements to be taxed.